IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., JOHN TIMOTHY DONEGAN, | ) ) ) | |
| Plaintiffs and Relator, | ) ) | |
| v. | ) ) | No. 4:12-CV-0876-DGK |
| ANESTHESIA ASSOCIATES OF KANSAS CITY, PC, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART MOTION TO DISMISS

This is a *qui tam* lawsuit in which Relator John Donegan ("Donegan" or "Relator") claims Defendant Anesthesia Associates of Kansas City, P.C., ("AAKC" or "Defendant") violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, by submitting fraudulent claims for reimbursement and terminating him in retaliation for his efforts to stop it from presenting false claims.

Now before the Court is Defendant's motion to dismiss the amended complaint (Doc. 22) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Defendant argues the Complaint fails to plead the FCA fraud claims in sufficient detail and fails to plead all the required elements of an FCA retaliation claim. Finding that the Complaint alleges the who, what, where, when, and how of the alleged fraud with particularity and provides the requisite representative examples, but fails to allege the second element of a retaliation claim, the motion is GRANTED IN PART. Count III is dismissed without prejudice.

**Standard of Review**

A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, the complaint must "contain sufficient

factual matter, accepted as true, to state a claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although it need not make detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

The complaint must also state a claim for relief that is plausible. *Iqbal*, 556 U.S. at 678. A claim is plausible when "the court may draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* In reviewing the complaint, the court accepts as true its factual allegations and draws all reasonable inferences in the plaintiff's favor. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 781 (8th Cir. 2009).

Additionally, a violation of the FCA must be pled with particularity pursuant to Rule 9(b). *Id.* at 783. Conclusory allegations that the defendant's conduct was fraudulent and deceptive are insufficient. *Id.* "[T]he complaint must plead the who, what, where, when, and how of the alleged fraud" so that the defendant can respond to the allegations "specifically and quickly." *Id.* Where the relator claims systemic fraud in violation of the FCA, he or she need not "allege specific details of every alleged fraud claim," but "must provide some representative examples of [the] alleged fraudulent conduct, specifying the time, place, and content of [the] acts and the identity of the actors." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (emphasis in original).

**Factual and Procedural Background**

Drawing all reasonable inferences in Relator Donegan's favor, the Court finds the facts to be as follows.

The Billing Guide for Medicare Part B anesthesia billing states that anesthesia is given under "medical direction" if, among other things, the doctor prescribes the anesthesia plan,

2

personally participates in the most demanding parts of the anesthesia plan (including induction and emergence, if applicable), and monitors the course of anesthesia administration at frequent intervals.

Relator worked for Defendant at its Menorah Medical Center location as a Certified Registered Nurse Anesthetist ("CRNA") from 2006 to 2012. During training, Relator's superiors told him and other CRNAs that it was AAKC's corporate policy to always check the "medical direction" box on Defendant's billing forms, whether or not the physician anesthesiologist rendered "medical direction" services. Relator personally observed eleven named anesthesiologists at the Menorah facility always check, or cause to be checked, the "medical direction" box on these forms. They checked this box even though they did not prescribe the anesthetic and were not present at emergence from general anesthesia.

Defendant's billing office subsequently relied on these billing forms to prepare and submit payment requests. As a result, Defendant submitted false claim to Medicare and other Government healthcare programs for physician "medical direction" of anesthesia services. Defendant's other facilities in the greater Kansas City area used these same forms, and it was corporate policy to always check the medical direction box. Since this was corporate policy, the Court infers the same practice was occurring at Defendant's other facilities in the greater Kansas City area.

Eventually, Relator came to understand that this billing practice was illegal. One morning in late December 2011, Relator told the physician anesthesiologist he was working with that day that he would no longer mark the "medical direction" box on the claim form. Shortly thereafter, another anesthesiologist sent Relator home for the day. That evening, another anesthesiologist telephoned Relator at home and told him that he should not return to work until notified otherwise.

On approximately January 3, 2012, Relator met with Defendant's Chief Operating Officer ("COO"). In their meeting, Relator told the COO he would no longer check the "medical direction" box on the billing form, but Relator did not explain why. The COO did not request an explanation, but communicated to Relator that Defendant would not continue to employ him if he would not check the box.

Shortly afterwards, the COO sent Relator a letter informing him that he was terminated effective January 4, 2012. The letter falsely states that Relator demanded to work in a non-medically directed role. It also falsely states that the COO told Relator during their meeting that Relator was welcome to continue working at AAKC until he found another job, provided he was able to meet its professional/conduct requirements. In fact, Defendant terminated Relator because he refused to continue checking the "medical direction" box even when it should not have been checked, a practice which resulted in Defendant submitting false claims to the Government.

The Complaint includes five representative examples of instances where, pursuant to Defendant's policy, Relator checked the "medical direction" box on the billing form even though the anesthesiologist did not prescribe the anesthetic, monitor the course of anesthesia administration, and/or was not present at emergence. The examples do not include patient names or exact dates, but provide other information from which the patient's name and date of treatment can be determined. For instance, the first example identifies the patient as an elderly female Medicare beneficiary who was a life-long smoker that surgeon Dr. Joyce performed a scheduled ventral hernia repair procedure on one afternoon in the middle of 2011. It also states that Dr. Vishal Chandra was the anesthesiologist listed on the pre-operative interview form, and Relator performed the anesthesia services. Each example includes details which only a person with personal knowledge of the events would know.

Relator filed this four-count lawsuit on July 10, 2012. After the Government declined to intervene, the Court unsealed the case on May 14, 2013. Count I alleges Defendant knowingly submitted false claims in violation of 31 U.S.C. §§ 3729(A)(1)(A) and 3729(a)(1). Count II alleges Defendant knowingly made or caused to be made a false statement in violation of 31 U.S.C. §§ 3729(A)(1)(B) and 3729(a)(2). Count III alleges Defendant retaliated against Relator by terminating him on January 4, 2012, in violation of 31 U.S.C. § 3730(h). Count IV alleges retaliation in violation of Kansas common law.

## Discussion

**I.     Counts I and II adequately plead FCA violations.**

Defendant contends that the Complaint fails to identify the who, what, where, when, and how of the fraud, and it cites *United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552 (8th Cir. 2006) in support. The Court finds the Complaint provides sufficient information to survive a motion to dismiss.

While the Complaint in this case and in *Joshi* concern the same general subject matter—allegations that an anesthesiologist submitted false claims for unsupervised anesthesia services—the complaint in *Joshi* provided significantly less detail. The *Joshi* complaint, for example, did not identify the CRNAs who allegedly provided unsupervised anesthesia services, when these events occurred, what services were provided, which patients received these services, and whether the relator had personal knowledge of the facts alleged, or how the relator learned of the fraudulent claims. *Id.* at 556. By contrast, the Complaint provides all of this information. It also makes clear that Relator claims to have personal knowledge of almost all of the allegations, and

it supplies more detail than the *Joshi* complaint, particularly in its representative examples section, which bolsters the credibility of Relator's recollections and allegations.[1]

Although the representative examples of fraudulent billing could be more specific, each example provides enough information to satisfy Rule 9(b). By reviewing its records, Defendant can identify the exact date of the surgery and the patient involved and thereby respond "specifically and quickly" to the allegations. *See United States ex rel. Miller v. Weston Educ. Inc.*, No. 4:11-cv-0112-NKL, 2012 WL 6190307, at *10 (W.D. Mo. Dec. 12, 2012) (holding providing the approximate dates of the representative examples of the FCA violations satisfies Rule 9(b)).

Additionally, the Complaint provides the requisite "who, what, where, when, and how" elements. These elements are summarized as follows:

Who: Eleven named AAKC anesthesiologists who provided anesthesia services at Defendant's Menorah facility.

What: Defendant submitted false "medical direction" claims for payment when the underlying conditions for a "medical direction" claim (namely, that the anesthesiologist prescribed the anesthetic, monitored the course of anesthesia administration, and was present at emergence), had not been met.

Where: Defendant staffed hospitals and surgical centers in the Kansas City area, such as Menorah, and AAKC's billing office.

When: From 2006 to the present. Each representative example provides a narrower time frame and other information from which Defendant can determine whether an alleged event occurred.

How: By instructing Defendant's CRNAs to always check the "medical direction" box on the billing form, regardless of whether the anesthesia services had been provided under medical direction. This form was then sent to the billing office, which processed the form and submitted a claim to a government healthcare program for payment.

---

[1] Of course, if these recollections and allegations are not verified in discovery, this will undermine Relator's case.

The Court finds no merit to the suggestion that the Complaint is "plagued with generalized and vague allegations," or that the representative examples "fail to describe fraudulent conduct." Accordingly, the Court holds Counts I and II sufficiently plead FCA violations.

## II. The Complaint fails to allege an FCA retaliation claim.

Defendant also moves to dismiss the FCA retaliation claim (Count III), arguing the Complaint fails to properly allege it terminated Relator in retaliation for protected activity under the FCA. To establish a retaliation claim under the FCA, the plaintiff must allege that "(1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity."[2] *Schuhardt v. Washington Univ.*, 390 F.3d 563, 566 (8th Cir. 2004). Conduct is "protected activity" if it is in furtherance of an FCA action or "reasonably could lead [] to a viable FCA action." *Id.* at 567. The phrase "reasonably could lead to a viable FCA action" means the employee in good faith believes "that the employer is possibly committing fraud against the government," and this belief is objectively reasonable. *Id.*

Defendant argues the Complaint fails to allege the second element, that it knew Relator was engaged in protected activity, because Relator did not report to his supervisors any fraudulent billing or that he had evidence of fraudulent billing. Relator does not deny he never reported any evidence of fraudulent billing to a supervisor, but he contends, without citing any

---

[2] Granted, the district court in *Collins v. Center For Siouxland*, No. C10-4015-PAZ, 2011 WL 2893038, at *12-14 (N.D. Iowa July 15, 2011), makes a persuasive case that the Eighth Circuit inadvertently added the sole motivation requirement in *Norback v. Basin Electric Power Cooperative*, 215 F.3d 848, 851 (8th Cir. 2000), a mistake which subsequent cases perpetuated. Nevertheless, because this Court is a district court and the Eighth Circuit has repeatedly stated that "sole motivation" is the applicable standard, *see, e.g., Schuhardt v. Washington University*, 390 F.3d 563, 566 (8th Cir. 2004); *Wilkins v. St. Louis Housing Authority*, 314 F.3d 927, 932-33 (8th Cir. 2002), the Court will apply it.

authority, that his refusal to select the "medical direction" box on the billing form was sufficient to put Defendant on notice of a false billing practice.

It was not. An employee's *statement* to his supervisor that he believes the employer's billing practice is fraudulent and illegal is sufficient to put the employer on notice that the employee is engaged in protected activity. *Id.* at 568-69. The Court, however, cannot find any authority suggesting that an employee's failure to do something he has been instructed to do—such as routinely mark a box on a form—somehow puts the employer on notice that the employee was engaged in protected activity. Thus, Relator's refusal to check the "medical direction" box, without explaining to his supervisors why, was not enough to put Defendant on notice. Accordingly, because Relator has not properly alleged the second element of an FCA claim, Count III is dismissed.

## Discussion

For the foregoing reasons, the motion to dismiss (Doc. 22) is GRANTED IN PART. Count III is dismissed without prejudice.

**IT IS SO ORDERED.**

Date:   July 28, 2014                         /s/ Greg Kays                         
                                                                                        GREG KAYS, CHIEF JUDGE
                                                                                        UNITED STATES DISTRICT COURT